UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADVANCED TARGETING SYSTEMS, INC., a corporation,<br><br>　　　　　Plaintiff,<br>　　vs.<br><br>ADVANCED PAIN REMEDIES, INC., a corporation; CATO RESEARCH LTD., a corporation; and DOES 1-50, inclusive,<br><br>　　　　　Defendants. | Case No.: 3:12-CV-2915-JM (WMC)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION & DENYING DEFENDANTS' MOTION TO DISMISS OR STAY THE ACTION WITHOUT PREJUDICE AND SUBJECT TO RENEWAL** |

　　Plaintiff Advanced Targeting Systems, Inc. filed a complaint against defendants Advanced Pain Remedies, Inc. ("APR"), and Cato Research Ltd. ("Cato Research") (together, "Defendants") in San Diego Superior Court.  On December 7, 2012, Defendants removed the present matter to this court.  On February 22, 2013, Defendants filed a Federal Rule of Civil Procedure ("Rule") 12(b)(2) motion to dismiss due to the court's lack of personal jurisdiction over APR ("MPJ") and a Rule 12(b)(7) motion to dismiss the action for failure to join an indispensable party under Rule 19.  Plaintiff contests the Defendants' motions, but requests the opportunity to conduct discovery or amend its complaint if the

1

court decides to dismiss this matter. For the following reasons, the court denies Defendants' Rule 12(b)(2) and Rule 12(b)(7) motions without prejudice. Plaintiff has until August 14, 2013 to conduct discovery related to jurisdictional issues. Defendant may file a new Rule 12(b)(2) and Rule 12(b)(7) motions by August 30, 2013.

## I.  Background

Plaintiff is a Delaware corporation headquartered in San Diego, California that develops and markets reagents[1] for scientific research, including a pain-killing conjugate known as Substance P-Sporin ("SP-SAP"). Defendant Cato Holding Company ("Cato Holding") provides worldwide regulatory consulting and clinical research services to clients seeking regulatory approval for the sale of drugs and the development of drugs for later licensing sales through its subsidiaries. Cato Holding is the holding or parent company for Cato Research, APR, and Research Triangle Pharmaceuticals LLC ("Research Triangle"). Research Triangle is also APR's predecessor-in-interest.

From 2007 to 2008, Plaintiff negotiated the terms of a Development and License Agreement ("DLA") with Cato Holding, which was acting on behalf of its subsidiary Research Triangle. The negotiations between Plaintiff and Cato Holding included six meetings, all of which took place in San Diego at either Plaintiff's or Cato Holding's offices. For at least one of these meetings, representatives from Cato Holding's North Carolina offices traveled to San Diego. Research Triangle eventually entered into a Development and License Agreement

---

[1] "A substance that is consumed in the course of a chemical reaction." Compendium of Chemical Terminology (Online ed., 1997) (available at http://goldbook.iupac.org/R05163.html).

("the DLA") with Plaintiff.  Later, APR assumed the DLA contract on behalf of Research Triangle.

Under the DLA, Research Triangle agreed to prepare and prosecute an investigational new drug application ("IND Application"), which is the regulatory filing necessary to obtain Food and Drug Administration ("FDA") approval of the sale and use of a new drug for humans, for SP-SAP.  The DLA required Research Triangle to provide Plaintiff with pertinent data generated by or on behalf of Plaintiff regarding the development of SP-SAP and to notify Plaintiff of any report submitted by Research Triangle to the FDA.  The DLA also granted Research Triangle an exclusive license to market a drug based on SP-SAP, but the license terminated if Research Triangle did not file an IND Application with the FDA by January 15, 2011.  In addition, the DLA required Research Triangle, as licensee, to "cause "Cato Research Ltd., a global contract research and development organization . . . to use reasonable efforts to . . . [p]repare [an IND Application] package for the Product, . . . [a]ssist [Plaintiff] with preparation for the pre-IND meeting for the Product with the FDA, . . . [a]ttend and participate in the pre-IND meeting, and  . . . [p]repare [an] outcomes and future strategy report." MPJ, Declaration of Craig Nicholas, Exhibit A, Section 3.2.  If a dispute regarding the DLA arose, the DLA provided that California law would govern and required the parties to the DLA to mediate disputes before resorting to litigation.

Pursuant to the DLA, Cato Research, Research Triangle, and later, APR in place of Research Triangle, began to take the steps necessary to obtain FDA approval for SP-SAP.  Here, the parties' stories diverge.  Plaintiff claims that it had instructed APR not to take any actions that would hinder progress on SP-SAP, such as filing a deficient IND Application, though Plaintiff assured APR that it

intended on continuing their partnership. See Opp. MTD at 4; Compl. ¶ 25. Nevertheless, APR filed an IND Application that Plaintiff considers to be a "Sham IND Application" because of its deficiencies. See Opp. MTD at 4; Compl. ¶ 26.

After filing the alleged "sham" IND Application, APR requested that the FDA take no action on this IND Application. See Opp. MTD at 4; Compl. ¶ 28. Plaintiff claims that the filing of this allegedly deficient IND Application violated the DLA's terms. Plaintiff further claims that Cato Holding and its affiliates falsely told it that the FDA response to the IND Application was quite positive and thereby violated the common law prohibition on false concealment. See Opp. MTD at 4; Compl. ¶ 53.

Defendants counter that "[t]he reality is very different" and deny Plaintiff's accusations. See MTD at 4. After the IND Application was filed, Defendants claim that the FDA called Lynda Sutton, President of Cato Holding, to discuss issues related to the IND Application that could have led to it being placed on hold. See id. Specifically, Defendants claim that the FDA was concerned about the clinical trial materials that Plaintiff allegedly controlled. See id. Defendants claim that Cato Research put the IND Application on inactive status to avoid the difficulty and stigma of removing a hold on the IND Application. See id. Defendants claim that the FDA later sent a letter detailing the issues that needed to be resolved for the IND Application to be acceptable, half of which could easily be resolved by Cato Research and half of which Plaintiff needed to resolve. See id. at 5.

In mid-2011, the parties initiated a contractual dispute resolution process, which commenced with a mutually agreed upon meeting at the San Diego Marina Marriott in San Diego, California. APR canceled the meeting at the last minute,

so a videoconference was held instead. APR terminated the videoconference after a short presentation by Plaintiff. The next step of the mediation took place at the JAMS office in San Diego in November 2011, but the parties did not explain the steps involved.

After mediation failed, Plaintiff filed a complaint against Defendants in California State court on October 29, 2012. Pursuant to California Code of Civil Procedure § 415.40, APR was served by registered mail on November 8, 2012. That same day, APR filed an "Application and Order Extending Time to File Complaint." APR later filed a complaint regarding the same dispute over the DLA at issue here in North Carolina on November 28, 2012.

## II.   Personal Jurisdiction

### A. Legal Standard

Plaintiff, as the party seeking to invoke jurisdiction, bears the burden of establishing that personal jurisdiction can be exercised over Defendants. See Flynt Distributing Co. v. Harvey, 734 F.2d 1389, 1392 (9th Cir. 1984). Plaintiff cannot rely solely on allegations in the complaint that have been appropriately challenged by affidavit. See Taylor v. Portland Paramount Corp., 383 F.2d 634, 639 (9th Cir. 1967). If this court acts on the motion to dismiss without holding an evidentiary hearing, however, Plaintiff is only required to make a prima facie showing of jurisdiction rather than a showing by a preponderance of the evidence. See Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001) ("That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant."). If unchallenged, Plaintiff's version of the facts is taken as correct. See id. If there is a factual conflict in the affidavits, the court must resolve that conflict in Plaintiff's favor. See id.

Determining whether a basis for the exercise of personal jurisdiction in a diversity of citizenship case exists depends on: (1) whether a state statute of the forum confers personal jurisdiction over the nonresident defendant and (2) whether the exercise of jurisdiction accords with federal constitutional principles of due process. See Data Disc, Inc. v. Systems Tech. Assocs., Inc., 557 F.2d 1280, 1286 (9th Cir. 1977). California's long-arm statute authorizes personal jurisdiction to the extent allowed under the constitution. See id.; Cal. Code Civ. Pro. § 410.10. Under the constitution, personal jurisdiction can take the form of either general or specific jurisdiction. See Data Disc, 557 F.2d at 1286.

General jurisdiction is established if a party's activities in the state are "substantial" or "continuous and systematic" regardless of whether those activities are related to the claim at issue. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984); Data Disc., 557 F.2d at 1287. However, a defendant may still be subject to specific jurisdiction if it has purposefully availed itself of the forum state and the controversy is related to or arises out of those contacts. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985). A court may only exercise specific jurisdiction over a defendant if doing so would comport with notions of fair play and substantial justice. See id. at 477. When analyzing whether a party's contacts with the forum support the exercise of specific jurisdiction, the court will consider whether: (1) the nonresident defendant engaged in some act or consummated some transaction with the forum or performed some act by which he purposefully availed himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim arises out of or results from the defendant's

forum-related activities; and (3) the exercise of jurisdiction is reasonable. See Flynt Distributing Co., 734 F.2d at 1393; Data Disc, 557 F.2d at 1287.

"This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." Rudzewicz, 471 U.S. at 475 (citations and internal quotations omitted).  The rubric for determining whether a defendant purposefully availed himself of conducting activities in the forum differs if the action lies in contract rather than tort.  The existence of a contract with a resident of the forum state is insufficient by itself to create personal jurisdiction over the nonresident.  See id. at 478 ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."); see also Gray & Co. v. Firstenberg Machinery Co., 913 F.2d 758, 761 (9th Cir. 1990).

"The existence of a relationship between a parent company and its subsidiaries is [also] not sufficient to establish personal jurisdiction over the parent on the basis of the subsidiaries' minimum contacts with the forum." Doe v. Unocal, 248 F.3d 915, 925 (9th Cir. 2001) (citing Transure, Inc. v. Marsh and McLennan, Inc., 766 F.2d 1297, 1299 (9th Cir. 1985)).  "[A] parent corporation may be directly involved in the activities of its subsidiaries without incurring liability so long as that involvement is 'consistent with the parent's investor status.'" Unocal, 248 F.3d at 926 (quoting United States v. Bestfoods, 524 U.S. 51, 72 (1998)). "Appropriate parental involvement includes: 'monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures.'" Id.

1 (citing Bestfoods, 524 U.S. at 72). "Nonetheless, if the parent and subsidiary are not really separate entities, or one acts as an agent of the other, the local subsidiary's contacts with the forum may be imputed to the foreign parent corporation. An alter ego or agency relationship is typified by parental control of the subsidiary's internal affairs or daily operations." Id. at 926 (quotation omitted); see also Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 591 (9th Cir. 1996) ("A parent corporation's relationship with its subsidiary may confer personal jurisdiction over the parent if the subsidiary is acting as the parent company's alter ego, so as to justify disregard of the corporate entity.").

**B. Discussion**

Defendants contend that the court has neither general nor specific jurisdiction over APR. However, Plaintiff only alleges that Defendant APR is subject to specific jurisdiction, thereby obviating the need for the court to consider whether this court has general jurisdiction over APR.

Defendants argue that APR never purposefully availed itself by conducting activities in California and that Cato Holding's activities should not be attributed to APR. Defendants assert that APR had no pre-contract contacts with California because APR was not involved with the negotiation of the DLA and entered into the DLA in Durham, North Carolina. See MPJ at 10. Defendants claim that the only potential contacts with California under the DLA are its California choice-of-law provision and provision to mediate any dispute in California. See id. Citing Gundle Lining Construction Corporation v. Adams County Asphalt, 85 F.3d 201, 206 (5th Cir. 1996), Defendants note that "consent to a forum's laws is not consent to jurisdiction by that forum's courts." MPJ at 10-11. Defendants add that Plaintiff's claim did not arise out of the mediation in California because the

parties' dispute matured well before mediation. See MPJ at 11. Finally, Defendants claim that their contacts with California were limited and that APR's performance under the DLA would take place primarily in North Carolina, where the company was located, and in Maryland, where the FDA was located. See MPJ at 11-12. Defendants then conclude that the aforementioned limited contacts with California do not amount to "purposeful availment." See id.

     Plaintiff counters that APR "cannot demonstrate that it is 'unreasonable' to expect it to litigate in California, given (among other things) that Plaintiff is based here, the parties negotiated a California choice-of-law clause, and they mediated their dispute in San Diego." Opp. MPJ at 10. In support of this argument, Plaintiff relies heavily on Burger King v. Rudzewicz, 471 U.S. 462 (1985), which held that specific jurisdiction is proper over an out-of-state defendant that has "created continuing obligations between himself and the residents of the forum." Id. at 475-76. In addition, Plaintiff notes that "the prior negotiations [of a contract with a party in another forum] and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing, must be evaluated to determine whether a defendant purposefully established minimum contacts within the forum." Id. at 479. And while the Rudzewicz decision held that a choice-of-law provision alone would be insufficient to confer jurisdiction, an ongoing interdependent relationship, such as the one Plaintiff claims was established under the DLA, "reinforce[s a party's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." Id. at 482. Plaintiff explains that APR had an ongoing obligation "to develop and market a drug candidate based on SP-SAP, to keep [it] apprised of regulatory developments, and, ultimately, to pay annual royalties to [Plaintiff]." Opp. MPJ at

10-11. Plaintiff also contends that APR dealt directly and had an ongoing and direct relationship with Plaintiff, increasing the foreseeability of possible litigation here.  See id. at 11.

Finally, Plaintiff argues that specific jurisdiction applies over its tort claim for fraud based on APR's suppression of its request to suspend the FDA's review of the "sham" IND Application.  See Opp. MPJ at 12.  Plaintiff argues that APR had an obligation to keep it apprised of regulatory matters, but instead led Plaintiff to believe that the FDA had cleared the SP-SAP drug candidate for clinical trials.  See id. 12.

The court concludes that Plaintiff has not yet demonstrated that APR had continuing obligations that tied APR to San Diego.  The submissions do not make clear whether APR's obligations under the DLA require it to maintain anything other than a standard contractual relationship.   It is also unclear whether APR even existed when the DLA was being negotiated.  The court also is wary of holding that this claim alone suffices for jurisdiction, especially as the fraud was based on a contractual duty.

However, Plaintiff has made a colorable showing that the court can exercise personal jurisdiction over APR because Cato Holding and APR's ties to one another appear to go beyond that of a normal parent-subsidiary relationship.  Indeed, the court has concerns regarding Cato Holding's negotiation of the DLA on behalf of APR's predecessor-in-interest.  It is questionable whether negotiating contracts is something an investor would typically do on behalf of a company.  Such actions suggest that Cato Holding and APR may have a relationship that goes beyond the ordinary investor relationship.   Defendants have not contradicted Plaintiff's colorable showing.

"[T]o obtain discovery on jurisdictional facts, the plaintiff must make at least a 'colorable' showing that the Court can exercise personal jurisdiction over the defendant." Mitan v. Feeney, 497 F. Supp. 2d 1113, 1119 (C.D. Cal. 2007) (citing Central States, S.E. & S. W. Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 946 (7th Cir. 2000)). A district court has discretion to permit or deny such jurisdictional discovery. See Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008). As previously stated, the Plaintiff has made a colorable showing. The court therefore, in its discretion, permits Plaintiff to conduct limited discovery to determine whether Cato Holding and its subsidiaries, including Plaintiff, has a relationship that existed beyond investor status.

### III. Motion to Stay or Dismiss this Action for Failure to Join an Indispensable Party

A party may file a Rule 12(b)(7) motion to dismiss for failure to join a party under Rule 19, which governs whether a party is considered indispensable to a civil action. See Fed. R. Civ. P. 19; Confederated Tribes of Chehalis Indian Reservation v. Lujan, 928 F.2d 1496, 1498 (9th Cir. 1991). The court must first determine whether a party is "necessary" to the adjudication of the case. See Confederated Tribes, 928 F.2d at 1498. If a party is necessary, the court must determine whether it is feasible to join that party. See id. Only if a necessary party cannot be joined does the court proceed to inquire into whether that party is "indispensable." See id. If an indispensable party cannot be joined, the action must be dismissed. See id.

Whether a party is necessary to the adjudication of the case is a fact-specific inquiry. Bakia v. County of Los Angeles, 687 F.2d 299, 301 (9th Cir. 1982). The Ninth Circuit has pointed to two significant issues: "First, the court must consider

if complete relief is possible among those parties already in the action. Second, the court must consider whether the absent party has a legally protected interest in the outcome of the action." Confederated Tribes, 928 F.2d at 1498 (citing Makah Indian Tribe v. Verity, 910 F.2d 555, 558 (9th Cir. 1990)).  Rule 19(b) provides that the factors to be considered in determining if an action should be dismissed because an absent party is indispensable: "(1) prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether there exists an alternative forum." Fed. R. Civ. P. 19; Confederated Tribes, 928 F.2d at 1498.

The court denies Defendants' Rule 12(b)(7) motion because it has denied Defendants' Rule 12(b)(2) motion, rendering Defendants' Rule 12(b)(7) motion moot.  Assuming that the court later determines that personal jurisdiction exists, Defendants' motion remains moot.  However, if the court later finds that it does not have specific jurisdiction over APR, then the court will entertain another Rule 12(b)(7) motion.

## IV.   Conclusion

For the aforementioned reasons, the court denies Defendants' Rule 12(b)(2) and Rule 12(b)(7) motions without prejudice.  Plaintiff has until August 14, 2013 to conduct discovery related to jurisdictional issues.  Defendant may file new Rule 12(b)(2) and Rule 12(b)(7) motions by August 30, 2013.

**IT IS SO ORDERED.**

DATED: June 3, 2013

Jeffrey T. Miller
United States District Judge